NO. 07-08-0003-CR
NO. 07-08-0004-CR
NO. 07-08-0005-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 22, 2009
_____

COY LANCE WHITE,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NOS. 10,982, 10,983 & 10,984; HON. DAN MIKE BIRD, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Coy Lance White appeals his three convictions, one for aggravated assault with a deadly weapon and two for felony deadly conduct. Through thirteen issues, he challenges 1) the legal and factual sufficiency of the evidence to support each of those convictions, 2) the trial court's admission into evidence of a gun similar to that allegedly used in each of the offenses, 3) the trial court's admission of appellant's oral statement and written

statement, 4) the trial court's failure to charge the jury on lesser-included offenses, and 5) the trial court's admission of extraneous offenses during the punishment phase. We affirm the judgments.

### Background

Each of appellant's convictions arose from the events of the evening of May 9, 2007, at a trailer house at 2200 Maiden Street in Vernon. Virginia White, her husband, and various friends and relatives, including appellant, were gathered both inside and outside of the house. At some point, Tiesha Youngberg asked Brad White, appellant's cousin, if she could have a beer which was laying by the curb. When she reached for it, appellant grabbed her by the throat and took the beer from her. When Brad asked appellant to let her go, Brad and appellant became involved in an altercation. One of the other attendees fired a weapon several times into the air ostensibly to break up the disagreement. After he did so, appellant became even more upset, made a call on his cell phone in which he stated he "would be back to blaze this mother fucker up," and left in his yellow Cadillac.

Approximately twenty minutes later, appellant returned to the location and began firing a weapon. Multiple shots were fired into the trailer house and later into a vehicle driven by Djuanna Newman. Appellant then entered the residence of a neighbor and displayed the weapon which was never recovered by police.

### Issues 1-8 - Legal and Factual Sufficiency

In his first eight issues, appellant asserts that the evidence supporting his convictions is both legally and factually insufficient. We overrule the issues.

2

The standards by which we review such challenges are well established.  We refer the parties to *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and *Watson v. State,* 204 S.W.3d 404 (Tex. Crim. App. 2006) for a discussion of them.

*Aggravated Assault against Djuanna Newman*

Appellant was charged with intentionally or knowingly threatening Djuanna Newman with imminent bodily injury by discharging a firearm in her direction and exhibiting a firearm. TEX. PENAL CODE ANN. §22.02(a)(2) (Vernon Supp. 2008).  He argues that there is no or insufficient evidence to show that he intentionally or knowingly discharged a firearm in her direction.

Djuanna testified that 1) after bullets were fired at the trailer house, she left to drive her uncle home, 2) on her way back, she saw appellant's car on the side of the road, 3) she observed his car door open, 4) she sped up, 5) she saw appellant's face "for maybe one second," 6) she saw gunfire coming from his car door, 7) upon arriving home, she noticed bullet holes in her windshield, in the front passenger side fender, in the front passenger side door, and in the trunk, and 8) appellant later apologized to her for what happened, offered her $100 to fix her car, and asked her to sign an affidavit of non-prosecution.  Other evidence illustrated that the bullet holes were not in the vehicle prior to Djuanna taking her uncle home.

Intent may be inferred from the acts, words, and conduct of the accused. *Guevarra v. State,* 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).  From the above evidence, a rational factfinder could infer, beyond reasonable doubt, that appellant intentionally aimed and fired at Djuanna as she approached and passed him.

3

As for the suggestion that the "one second" in which Djuanna claims to have seen appellant's face being too weak to support the verdict, we note that Djuanna knew appellant previously and was, in fact, related to him. So she was capable of recognizing him. Furthermore, the credibility of her identification was for the jury to weigh and determine, and we find its resolution of that matter factually sufficient to support the verdict.

*Deadly Conduct Against Meadiol Lee*

Appellant was also charged with aggravated assault against Meadiol Lee. However, the jury found him guilty of felony deadly conduct. Next, a person engages in such conduct if he knowingly discharges a firearm at or in the direction of someone. TEX. PENAL CODE ANN. §22.05(b)(1) (Vernon 2003). Appellant asserts that there is no evidence or insufficient evidence showing that he knowingly shot at Meadiol. And, we again disagree.

The record shows that 1) Meadiol overheard appellant say that he was going to come back to the trailer house and shoot up the place, 2) later she exited her truck which was parked at the residence, looked behind her, and saw someone start shooting, 3) she fell to the ground and prayed that she wouldn't be shot, 4) appellant later apologized to her for the incident and said he wasn't trying to hurt her but was upset, 5) she signed an affidavit of non-prosecution at appellant's request, and 6) the tires of her truck were shot out as well as the front and back windows. It is true that Meadiol was unable to state that appellant was the one who shot at her. However, given appellant's prior threat, eyewitness testimony that appellant was in the same area with a gun and he was seen firing it after having looked in the direction of the trailer house, and his later apology to her for the incident, a rational jury could have inferred, beyond reasonable doubt, both that he was the

4

person shooting in the direction of Meadiol and that he knowingly did so. Furthermore, that finding would not be so against the great weight of the evidence as to be manifestly unjust.

*Deadly Conduct by Firing into House*

Finally, the jury found appellant guilty of deadly conduct by knowingly discharging a firearm at or in the direction of a habitation (the trailer house on Maiden Street) and was reckless as to whether the habitation was occupied. *See* TEX. PENAL CODE ANN. §22.05(b)(2) (Vernon 2003). Appellant believes that there was insufficient evidence to prove that he 1) intentionally or knowingly fired several shots into the residence, and 2) was reckless as to whether the house was occupied. We disagree.

The record contains evidence showing that 1) appellant had been at the house twenty minutes earlier and knew that there were several people in the house, 2) appellant threatened to come back and shoot up the place, 3) appellant asked someone to bring him an "SK," 4) one of the residents heard "a lot" of shots and the shots were "one after the other," 5) appellant was seen in the area around that time with a large gun, 6) appellant was observed to have exited his car, looked at the trailer, and then fired a "long gun" multiple times, 7) shell casings of a size to fit either an SKS rifle or an AK-47 were found in the area where appellant was seen shooting the gun, 8) bullets were heard hitting the house, and 9) three fresh bullet holes were found on the side of the house. The jury was free to infer from this that appellant was reckless as to whether occupants were in the residence and that he intentionally or knowingly fired several rounds into it. Moreover, such inferences do not arise from weak evidence and are not overwhelmed by contradictory evidence.

5

*Issue 9 - Admission of Gun*

During trial, the State was allowed to introduce into evidence a replica of the gun allegedly used by appellant during the commission of his offenses. That replica was an SKS assault rifle which appellant argues was merely used to inflame and prejudice the jury. We overrule the issue.

An object which is not an exact replica of the one used to commit an offense is admissible as demonstrative evidence if 1) the original is unavailable, 2) the original would be admissible if available, 3) the evidence is relevant and material to an issue in controversy, and 4) its probative value outweighs any inflammatory affect. *Simmons v. State,* 622 S.W.2d 111, 113-14 (Tex. Crim. App. 1981). And, whether the trial court erred in admitting such demonstrative evidence depends on whether it abused its discretion. *Id.*

The rifle admitted into evidence was identified as looking similar to the gun that appellant carried. Thereafter, the trial court instructed the jury to consider the firearm solely as evidence that demonstrates the appearance of the object used in the alleged offense. Next, a firearm may be relevant to aid the jury in understanding what type of weapon was used and in understanding a complaining witness' testimony. *Fletcher v. State,* 902 S.W.2d 165, 167 (Tex. App.–Houston [1st Dist.] 1995, pet. ref'd). Moreover, the type of weapon used here (an assault or combat rifle) was relevant to determining the pivotal issue of appellant's intent. Thus, we cannot say the trial court's decision to admit the rifle fell outside the zone of reasonable disagreement or evinced abused discretion.

6

*Issue 10 - Testimony of Jeff Case*

Appellant next complains of the admission of his oral and written statements to Jeff Case, an investigator for the district attorney. Purportedly, both statements were the result of a custodial interrogation. We overrule the issue.

According to the record, appellant came to the District Attorney's office and requested to speak with someone. This occurred the day after his arrest and release on bond. Not knowing of the shooting, Case spoke with him and was told that "people were saying he [appellant] shot at them." When asked whether he indeed had shot at someone, appellant replied, "only after they had shot at me first." Thereafter, appellant left and returned the next day with his father and brother to execute a written statement. The latter contained the *Miranda* admonishments, but in executing it, appellant said nothing about shooting a weapon. Appellant left after giving the statement.

Assuming *arguendo* that appellant's voluntarily appearing at the District Attorney's office, requesting to speak with someone, engaging in a conversation with an investigator, leaving a short time later, voluntarily reappearing the next day with kin to make another statement, and again leaving evinced custodial interrogation (which we doubt), we find no harm arising from receiving the statements into evidence. This is so because the admission to Case about shooting the firearm was, for all practical purposes, no different than an admission to shooting the rifle implicit in appellant's apologies to his victims, offers to recompense them, efforts to explain his conduct, and requests that they not prosecute him. So, because like evidence which appellant does not attack appears of record, we cannot say that he suffered any harm when the trial court allowed the jury to hear what he told Case.

7

*Issue 11 - Lesser-Included Offenses*

Next, appellant contends that he was entitled to charges on the lesser-included offenses of felony and misdemeanor deadly conduct with respect to the accusation of aggravated assault. A person can be guilty of deadly conduct by recklessly engaging in conduct that places another in imminent danger of serious bodily injury. TEX. PENAL CODE ANN. §22.05(a) (Vernon 2003). Appellant argues that the jury could have found him reckless as to whether the vehicle driven by Djuanna was occupied. He also claims the vehicle could have received the bullet holes during the shooting at the trailer house. And, if the jury so concluded, he allegedly would have been entitled to the instructions. We overrule the issue.

To be entitled to a lesser instruction, there must be evidence of record affirmatively negating the element present in the greater offense but absent in the lesser. *Morris v. State,* No. 07-99-0498-CR, 2000 Tex. App. LEXIS 7181 at *5 n.1 (Tex. App.–Amarillo October 25, 2000, pet. ref'd) (not designated for publication). It is not enough to simply rely on the State's failure to prove the particular element. *Id.* Here, there was evidence that Djuanna's vehicle did not have any bullet holes in it when she left the trailer house to drive her uncle home. She also testified that she sped up when she saw appellant parked along the road negating any contention that the vehicle was not moving when appellant shot at it. Yet, we find no evidence to support the contention that appellant was only reckless as to whether the vehicle was occupied or that the car was only shot at during the shooting incident at the trailer. Accordingly, the trial court did not err in failing to give the requested instructions.

8

*Issues 12 & 13 - Admission of Extraneous Offenses*

In conclusion, appellant complains of the admission into evidence during the punishment phase of certain extraneous offenses. This evidence consisted of testimony from a cell mate of appellant's who stated that appellant had forced him to perform sexual acts on and receive them from appellant while in prison. We overrule the issue.

The standard of review again is one of abused discretion. *Ellison v. State,* 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). Additionally, during the punishment phase of a trial, the trial court may admit evidence of extraneous offenses or bad acts that are shown, beyond a reasonable doubt, to have been committed by him or for which he could be held criminally responsible regardless of whether he previously was charged with or finally convicted of them. TEX. CODE CRIM. PROC. ANN. art. 37.07 §3(a)(1) (Vernon 2006). Next, such evidence is highly probative of appellant's character, *see Lamb v. State,* 186 S.W.3d 136, 144 (Tex. App.–Houston [1st Dist.] 2005, no pet.), and relevant in assisting the factfinder in selecting the appropriate punishment in a particular case. *Sims v. State,* No. PD-1575-07, 2008 Tex. Crim. App. LEXIS 820 at *8 (Tex. Crim. App. July 2, 2008).

While the type of extraneous acts in question here are repulsive to some, they nonetheless evince appellant's character, reflect the threat that he poses to others, and bear on the likelihood of rehabilitation. Thus, a factfinder could legitimately deem them quite relevant in determining his sentence. And, given their probative value, we cannot say the trial court's decision to admit them fell outside the zone of reasonable disagreement. *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (specifying that to be the test in assessing whether discretion has been abused).

9

Having overruled all of appellant's issues, the judgments of the trial court are affirmed.

Per Curiam

Do not publish.